LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Robert A. Adams

 v.

Carrier Corporation, etc.

Benjamin N. Beasley

 v.

Carrier Corporation, etc.

April 10, 1973

By JUDGE A. CHRISTIAN COMPTON

  Enclosed you will find a copy of the order entered today in each of these cases sustaining the several pleas of the statute of limitations filed by the defendants Carrier Corporation, Acme Industries, Incorporated, William A. Brown, Walford's Administrators, Wright's Administrator and Charles E. Wilkerson, and which orders dismiss these actions as to these defendants.

  At issue is the interpretation and constitutionality of Code § 8-24.2 enacted by the General Assembly in 1964.

  The material allegations in these two cases filed on May 18, 1972, being identical, the following comments will speak of only one case but they will apply to both cases _mutatis mutandis._

The plaintiff seeks recovery in damages for bodily injuries sustained on July 30, 1970, while he was lawfully on the premises of the defendant United Methodist Children's Home of Virginia. He alleges that he went to The Home on a service call for his employer, a local plumbing and heating contractor, and while there an explosion occurred resulting in the injuries claimed. The call for service resulted from the fact that the air conditioning unit in the administration building of The Home would not start.

As to the defendants Carrier and Acme, the plaintiff alleges that they "negligently (Count 4) designed, manufactured, marketed, distributed, delivered and sold" the certain central air conditioning unit which caused his injuries, the said equipment being inherently dangerous (Count 8). He further charges these defendants (Count 5) with negligently failing to warn him of the "dangerous, defective, unsafe and imminently and inherently dangerous conditions" existing in the equipment which were known to these defendants. He also seeks recovery against Carrier and Acme for breaches of express (Count 6) and implied (Count 7) warranties of the safety of the equipment. In Count 8, these defendants are charged with selling an inherently dangerous product.

As to the remaining defendants filing special pleas, the consulting engineer and the architects, the plaintiff seeks recovery in negligence (Counts 9 and 10), express warranty (Count 11), and implied warranty (Count 12).

From the stipulation of the parties (see Mr. Sanderlin's letter of October 20, 1972) and certain requests for admissions (see order of October 10, 1972) the following are the undisputed facts: that the instrumentality causing the injury was a 25-ton central air conditioning unit made up, in part, of a water chiller, compressor and certain electrical and mechanical control equipment; that such unit is mounted on concrete pads and bolted to the floor (see photographs) of one of the buildings of The Home and is connected

to the interior of the building by pipes; that it supplies air conditioning to the offices within the building containing it; that the unit was installed during and prior to 1960; that the architectural and engineering services alleged to have been performed were completed during the year 1960; and that all of the equipment aforesaid was designed, manufactured, marketed, distributed, delivered and sold by Acme and Carrier during or prior to 1960. The plaintiff admits that at no time since the installation of said unit during or prior to 1960, has said unit been in the possession or control of Acme or Carrier.

The manufacturers, engineer and architects assert that this action is barred by the provisions of Code § 8-24.2, the provisions material here being as follows:

> No action to recover damages for . . . bodily injury . . . arising out of the defective and unsafe condition of an improvement to real property, . . . shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction or construction of such improvement to real property more than five years after the performance or furnishing of such services and construction. . . .

The plaintiff challenges the constitutionality of the section. He also contends that it has no application to the manufacturers herein, even if it is constitutional.

The constitutional issue will be disposed of first. If the statute meets this test, the pleas of the engineer and architects must be sustained since the plaintiff does not contend that the statute does not apply to them by its clear terms.

The court holds the statute to be constitutional. The plaintiff makes general references to the due process clauses of the state and federal constitutions, but the main thrust of his attack is based on

the argument that the statute is constitutionally prohibited special legislation. He relies mainly on the decision of Skinner v. Anderson, 231 N.E.2d 588 (Ill. 1967), which declared unconstitutional a similar statute as violating a section of the Illinois constitution similar to Article IV, § 14(18) of the 1971 Constitution of Virginia prohibiting passage of special laws granting to any person any special or exclusive privilege or immunity. (The same language was contained in our former constitution. See Article IV, § 63[18] of the 1902 Constitution of Virginia.) See also Comment, 28 Catholic U. L. Rev. 361 at 369 (1969).

Skinner involved a claim against an architect for death and personal injuries sustained when refrigerant gas leaked into a dwelling designed by the defendant its construction having been supervised by him.

The Illinois court found an "arbitrary quality" to the statute in that it gave immunity to the architects and contractors only and held that the classification so made was not "reasonably related to the legislative purpose." 231 N.E.2d at 590, 591.

This court is not persuaded by Skinner. A court should approach constitutional questions with great caution. Martin v. Commonwealth, 126 Va. 603, 608 (1920). Every presumption is to be made in favor of the constitutionality of a statute and it can never be declared invalid except when it is clearly and plainly so. 17 M.J. Statutes, § 29, p. 273.

An arbitrary separation of persons of the same general class, so that some of them will be affected by the law and others will not, is the essence of unconstitutional special legislation. 126 Va. at 610. To determine what constitutes such "arbitrary separation," one must look to the purpose and subject of the particular act. Ibid. "Constitutional prohibitions against special legislation do not prohibit classification . . . the necessity for and the reasonableness of classification are primarily questions for the legislature. If any state of facts can be reasonably conceived, that would sustain it, that state

of facts at the time the law was enacted must be assumed." ibid. at 612-613. (Emphasis supplied)

When examining the purpose and subject of § 8-24.2, it is clear that no arbitrary separation of persons in the same general class has been made. What state of facts can be "reasonably conceived" which would sustain § 8-24.2 constitutionally? In the early 1960s, the potential liability of architects, designers, engineers and building contractors became extended when the shelter of the privity of contract doctrine was removed. 28 Catholic U. L. Rev. at 361. In 1962 in Virginia--two years before the enactment of the statute in question--manufacturers lost the defense of lack of privity of contract when Code § 8-654.3 (now § 8.2-318) became law. In 1966, the defense was eliminated in cases not covered by the aforesaid statute. Code § 8-654.4. So it is reasonable to conclude that at the time of the enactment of § 8-24.2, the need was apparent for legislation to protect architects, engineers, contractors and manufacturers from damage suits filed years after their work was completed and when the owner, or others, had been in control of the premises for the intervening period of time. See Wiggins v. Proctor & Schwartz, Inc., 330 F. Supp. 350, 354 (E.D. Va. 1971), aff'd. per curiam March 8, 1972. Accordingly, § 8-24.2 was enacted to protect the class of persons aforesaid, such class including all of those who perform work to furnish improvement to real property and who then leave the premises in the possession and control of others. ("Improvement" is used in the sense of a valuable addition made to property, usually real estate. Black's Law Dictionary, Third Edition, p. 927) Such classification is "natural and reasonable, and appropriate to the occasion" (126 Va. at 612) and the act containing such classification is constitutionally valid general legislation.

Since the statute in question does not contravene the constitution, the pleas of the engineer and architects herein must be sustained since they completed their work on the premises in question more than five years before this suit was filed.

The court also determines that the statute covers manufacturers who, as here, make fixtures which are permanently affixed to an existing building. Wiggins, supra. As did the Fourth Circuit in affirming, this Court adopts the reasoning of the able district judge in Wiggins. The equipment in this case weighing 25 tons, bolted to the floor, mounted on concrete pads, and connected by pipes to the interior of the building constitutes "an improvement to real property." Carrier and Acme, the manufacturers, furnished the "construction of such improvement to real property." It would only prolong this opinion unnecessarily to say more on that point.

The plaintiff also urges that claims arising out of alleged imminently and inherently dangerous conditions are not covered by the provisions of the statute. The clear language of the section furnishes the answer to this argument wherein it is provided in unqualified terms that "[n]o action to recover . . . . shall be brought . . . ." (Emphasis added) If the nature of the action contemplated was to be restricted, the legislature could have easily so provided.

The plaintiff offered testimony from a member of the General Assembly and from an official of a trade association, both of whom were involved in the enactment of the statute in 1964, in support of his position that the statute was never intended to cover manufacturers. This testimony has been ruled inadmissible by the court. "The intention of the draughtsman of the act, or the individual members of the legislature who voted for and passed it, if not properly expressed in the act, it is admitted has nothing to do with its construction." City of Richmond v. Supervisors of Henrico Co., 83 Va. 204, 212 (1887). See also Perry v. Board of Funeral Directors, 203 Va. 161, 165 (1961).

The plaintiff in support of his position has tendered a copy of a report of the House of Delegates Committee for Courts of Justice dated February 5, 1973, which states that Wiggins "constitutes an erroneous interpretation of section 8-24.2." The plain-

tiff says that the 1973 General Assembly amended the section to specifically exclude manufacturers or suppliers "of any equipment or machines or any other articles which are installed in or become a part of any real property either as an improvement or otherwise." The section as passed in 1964 and not 1973, of course, governs the ruling on this cause of action. The right to plead the statute had accrued and the defendant manufacturers had acquired a vested right by the passage of the required time and such right cannot be taken away by subsequent legislation. Kesterson v. Hill, 101 Va. 739, 743-744 (1903). Cf. Bain v. Boykin, 180 Va. 259, 264 (1942).

Moreover, as the defendant Acme argues, it is just as logical to conclude from its words that the 1973 amendment demonstrates the correctness of Wiggins and shows the need for additional language to deny manufacturers the coverage of § 8-24.2.

Furthermore, when, as here, the intention of the legislature is clear from the language used, there is no need for the court to construe that which has no need of construction. Temple v. Petersburg, 182 Va. 418, 423 (1944). Accordingly, no source other than the words of the 1964 statute may be used by the court to determine its meaning.

In view of what has been said herein, the pleas of Carrier and Acme are sustained.